## ESTATE OF HONORA SHARP, DECEASED.

[No. 52; decided May 9, 1907.

**Charitable Corporation—Gift to Within Thirty Days of Death.—** The Kings Daughters Home for Incurables, a corporation without capital stock, organized to maintain a home for persons afflicted with incurable diseases, is a charitable or benevolent corporation, although it receives pay patients in carrying out the objects of its formation but not for the profit of its members; and a bequest to it is governed by the restrictions imposed by section 1313 of the Civil Code.

**Charity—Bequest to Within Thirty Days of Death—Revocation of Prior Bequest.—**Where a testatrix executes a codicil in which she

expressly revokes a bequest in her will of $50,000 to the Kings Daughters Home for Incurables, and in place thereof gives $25,000 to the Kings Daughters Home for Incurables, and $25,000 to the Society for the Prevention of Cruelty to Animals, the codicil, notwithstanding it otherwise fails because the testatrix dies within thirty days after its execution, revokes the gift in the will.

J. N. Young, for the applicant.

Charles S. Wheeler, for the trustees, R. H. Lloyd and Adolph B. Spreckels.

COFFEY, J.    The will of Honora Sharp dated fourth day of January, 1905, contained the following clause:

"THIRD. I devise and bequeath to the Kings Daughters Home for incurables now located at 317 Francisco Street, San Francisco Fifty thousand Dollars."

On the twenty-first day of January she added a codicil as follows:

"I, Honora Sharp, the testatrix in the foregoing will, of date the 4th day of January, A. D. 1905, do now hereby change the said will in this respect, viz: In & by the third subdivision of said will I devised and bequeathed to the Kings Daughters Home for Incurables, Fifty thousand Dollars: I now cancel and revoke said devise and bequest, &, in the place and stead thereof, I give to the said Kings Daughters Home for Incurables, twenty five thousand Dollars.—I give to the San Francisco Society for the Prevention of Cruelty to Animals, twenty five thousand Dollars.  In all other respects I affirm and republish the said will & declare it with this codicil to be my last Will.

"Witness my hand and seal at San Francisco, this twenty first day of January, A. D. 1905.

                              "HONORA SHARP    (Seal)"

She died February 8, 1905.

The Kings Daughters Home applies for the payment of the legacy mentioned in the third clause quoted, alleging that the applicant is now and has been continuously for more than five years last past, a corporation duly incorporated, organized and existing under the laws of the state of California, for the purpose of establishing and maintaining an institution or institutions in the city and county of San Francisco, or

elsewhere in the state of California, as a home for people who are suffering with incurable diseases other than contagious diseases, and for acquiring and holding all such real and personal property as may be necessary to accomplish the objects of the corporation and having its principal place of business at and within the said city and county of San Francisco, where it has been maintaining and is now maintaining such a home, and at the date of said will its home was located at 317 Francisco street, in the city and county of San Francisco, California, and this petitioner is and was the person to whom said legacy was given. Said corporation has no capital stock; that in said home the petitioner has admitted and is still admitting many of such sick and diseased persons who have been and are there treated for their ailments by skillful physicians; that said so-called codicil, at the time of the probate of the will, was filed of record herein and is now on file; and, that in and by said codicil the said Honora Sharp attempted to so modify her will as to reduce the said $50,000 to $25,000 and to give to the San Francisco Society for the Prevention of Cruelty to Animals $25,000, but within thirty days thereafter she died. Wherefore the Kings Daughters Home asks for an order distributing to it the amount of $50,000.

To this petition the trustees make answer, averring that although said instrument dated the fourth day of January, A. D. 1905, contained a paragraph or clause reading in the manner alleged, the said clause never became operative, but was duly canceled and revoked by a written codicil to said will, declaring such revocation, which codicil was duly executed with the same formalities with which a will should be executed by said testatrix pursuant to section 1276 of the Civil Code of the state of California, which is hereby referred to and made a part thereof. The trustees admit that the petitioner is now and has been continuously, for more than five years last past, a corporation duly incorporated, organized and existing under the laws of the state of California, for the purpose of establishing and maintaining an institution or institutions in the city and county of San Francisco, or elsewhere in the state of California, as a home for people who are suffering with incurable diseases other than contagious diseases, and for acquiring and holding all such real and per-

sonal property as may be necessary to accomplish the objects of the corporation, and having its principal place of business at and within the said city and county of San Francisco, where it has been maintaining and is now maintaining such a home, and at the date of said will its home was located at No. 317 Francisco street, in the city and county of San Francisco, California, and the petitioner, the Kings Daughters Home for Incurables, is and was the person to whom said legacy was given; that said corporation has no capital stock; that in said home that the petitioner has admitted, and still is admitting, many of such sick and diseased persons who have been and are there treated for their ailments by skillful physicians, and in this regard the said trustees aver that the said corporation is and was at the time of the execution of said will and codicil and at the time of the death of Honora Sharp, a charitable or benevolent society or corporation, and that the said bequest contained in the said codicil was made by the said deceased within thirty days before the death of the said testatrix; that the said testatrix died as hereinbefore alleged, on the eighth day of February, 1905. The trustees deny that in or by the said so-called codicil the said Honora Sharp attempted to or did so modify her said will of January 4, 1905, as to reduce the said $50,000 so given by said will to the Kings Daughters Home for Incurables, but, on the contrary, allege and aver that in and by the terms of said codicil the said deceased intended to and did on the twenty-first day of January, 1905, cancel and revoke said bequest of $50,000 to the Kings Daughters Home for Incurables as contained in the third paragraph of said will, and the said trustees deny that the said petitioner, the Kings Daughters Home for Incurables, is entitled to the sum of $50,000 or any other sum or any sum at all out of the assets of the said estate.

The petitioner contends that notwithstanding the invalidity of the bequest in the codicil as to the Society for the Prevention of Cruelty to Animals, it would be valid as to the Kings Daughters Home because that institution is a business corporation to whom the thirty days' limitation does not apply; but, petitioner asserts, the codicil having been executed for the sole purpose of bestowing the benefaction to the prevention of cruelty society it fails in its entire purpose and

leaves intact the testamentary bequest of $50,000 to petitioner unaffected. Petitioner further argues that if there had been no provision in the will for it, and the codicil had been executed for the purpose of giving $25,000 to each of such legatees, the Kings Daughters Home would, for the same reason, be entitled to the legacy thereunder and the Home does claim such bequest under the codicil, if the court shall hold it valid, and the other $25,000, under the will; but if the court hold the codicil entirely invalid, then the Home claims the whole $50,000 under the will.

According to. this ingenious argument, whichever way the court decides the Home will secure the full amount of the original legacy.

That the will and codicil show an intent to devote $50,000 to good purposes is obvious; and that so far as the codicil designs to bestow the bounty of the testatrix to a benevolent use it is ineffectual, by reason of her death so soon after its execution, is conceded; but the Home insists that it is not a charitable or benevolent institution, within the purview of the statute, but a business concern, to wit, a hospital in which patients are received for a valuable consideration, and it is, therefore, qualified and entitled to take under the codicil $25,000, and $25,000 under the will.

The two sections of the Civil Code affecting this contention are as follows:

"1275. A testamentary disposition may be made to any person capable by law of taking property so disposed of, except that corporations other than counties, municipal corporations, and corporations formed for scientific, literary or solely educational or hospital purposes, cannot take under a will, unless expressly authorized by statute; subject, however, to the provisions of section thirteen hundred and thirteen."

"1313. No estate, real or personal, shall be bequeathed or devised to any charitable or benevolent society, or corporation, or to any person or persons in trust for charitable uses, except the same be done by will duly executed at least thirty days before the decease of the testator; and if so made, at least thirty days prior to such death, such devise or legacy, and each of them, shall be valid; provided, that no such devises or bequests shall collectively exceed one-third of the

estate of the testator leaving legal heirs, and in such case a pro rata deduction from such devises or bequests shall be made so as to reduce the aggregate thereof to one-third of such estate; and all dispositions of property made contrary hereto shall be void, and go to the residuary legatee or devisee, next of kin or heirs, according to law."

The claimant's contention, shortly stated, is that the testatrix first gave $50,000 to the Home, then attempted to reduce the amount to $25,000, by the codicil; that this latter sum was a continuation of what was given in the will; and that it was not a revocation of the original bequest; and the claimant holds that this view follows the trend of the supreme court decisions which expressly hold that the intent of the testator shall prevail.

That a will is to be construed according to the intention of the testator scarcely needs the citation of authorities.

Estate of McCauley, 138 Cal. 436, 71 Pac. 512: "Section 1317 provides that 'A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible.' In construing section 1287 we must keep in view the various sections relating to the subject of wills, and must so construe that section as to preserve the letter and spirit of all of the provisions of the statute so far as possible. The section should have such construction, if it is possible in reason to do so, as will carry out the known intention of the testator."

There is no doubt here of the intention of this testatrix. It was charitable and benevolent. It can hardly be maintained that she was intent upon fostering business enterprises. No more can it be successfully contended that the claimant is a business enterprise in the ordinary or in the statutory sense. "Business" is usually understood to be an occupation or employment engaged in for livelihood or gain, according to a definition by Webster, who also defines a "hospital" (quoted by claimant), as (1) "A place for shelter or entertainment"; (2) "A building in which the sick, injured or infirm are received and treated; a public or private institution founded for the reception and cure, or for the refuge, of persons diseased in body or mind, or disabled, infirm or dependent, and in which they are treated either at their own expense, or

more often by charity in whole or in part; a tent building or other place where the sick or wounded of an army are cared for.''

Black in his Law Dictionary defines ''business'' as ''that which occupies the time, attention and labor of men for the purpose of a livelihood or profit,'' and ''hospital'' as ''an institution for the reception and care of sick, wounded, infirm, or aged persons; generally incorporated,'' and then of the class of corporations called ''eleemosynary'' or ''charitable.''

Claimant asserts that it is a business corporation and not a charitable or benevolent institution.

It must accept either horn of this dilemma: It is either a business or a benevolent corporation. If business, the bequest is valid as to whole will; if benevolent, void as to codicil, valid as to prior will. That is the position of claimant.

The authorities relied upon by claimant do not sustain its contention that it is a business corporation, for, according to its own statement, it has no capital stock and enjoys no gain pecuniarily from its pursuit; and it solicits suffrage from the charitably disposed for its maintenance. It is true it accepts pay patients, but its primary purpose is to carry on an organization helpful to mankind, and not to make money out of their misery or misfortune. Pecuniary profit was not its object. It was the humane end and aim of their existence that testatrix evidently had in view, when she made her bequest to the two societies mentioned in the codicil, and she put them both on the same plane, in the same category. Except so far as any and every institution, charitable or benevolent, or commercial, must have a business organization and a methodical conduct of its affairs, in order to attain high efficiency, neither of the societies named, although each incorporated, was in the sense a ''business corporation,'' but was designed to accomplish a humane, charitable, and benevolent purpose.

Page on Wills says that a hospital incorporated without any capital stock, and not for any financial benefit of its members, is a charity in this sense. The evidence shows that this claimant is and has been such an institution, and the conclusion is,

that the testatrix had that fact in mind when she made her will.

But the claimant contends that, if this finding be correct, the Home is entitled to take under the will of January 4, 1905, because section 1313 of the Civil Code recognizes its right to such legacy, even confers the right, as the supreme court has decided that it is expressly declared that a bequest made to any charitable or benevolent society, or corporation, in trust for charitable uses, if made at least thirty days prior to the death of the testator shall be valid, and under section 1275 of the Civil Code claimant says the Home is entitled as a corporation for hospital purposes.

The court finds, therefore, that the claimant is and was at the time of the execution of the will and codicil, and at the time of the death of the decedent, a charitable or benevolent society, or corporation, and that the said bequest contained in the codicil was made within thirty days before the death of the testatrix, and, hence, is void.

In this alternative contention, the whole argument of claimant is based on the assumption that the invalidity of the bequests in the codicil restored or revives the prior testamentary disposition, since the sole purpose of the codicil was to take $25,000 from the Home and to bestow it upon the animals society, thus modifying and dividing the original legacy, and that purpose failed, the entire codicil fails. The manifest intention of the testator is to be carried out, and if not to its full extent, then so far as possible.

Certainly it is the desire, as it should be the duty, of this court to carry out this design of the decedent, if it can legally be accomplished; but it must be done according to legal rules, no matter how deserving the object of testatrix's benevolent intention; that is to say, if her intention is defeated by the law, as determined by the principles of construction and interpreted by authority, the court must decide against the claimant.

Claimant insists, however, that the authorities are in its favor on the proposition that the codiciliary bequest being invalid, by reason of the thirty days' statutory inhibition, although the instrument was executed in strict accordance with

all the forms imposed by statute, nevertheless, the testamentary provision prevails.

To sustain this view, counsel cites Page on Wills, a work which he properly places in the highest rank as a text-book, and also Underhill, a treatise of merit, to show that the codicil in the case at bar does not revoke the provision of the will giving to the Home the specified legacy; but it will appear from an examination of the cases and citations from the volumes named that they depended mainly upon defective execution, and this is not such a case. In this instance there was nothing wanting in the legal requirements of the execution of the codicil (section 1276, Civil Code), but the legacy itself failed for lack of capacity in the legatee to take under section 1313, Civil Code. Two of counsel's quotations are here inserted to illustrate this point. 1 Underhill on Wills, page 340, paragraph 250, says: "If the writing containing a clause expressly revoking former wills is improperly executed as a will, either because improperly attested or subscribed, or because the testator is lacking in testamentary capacity or otherwise, it fails altogether and in toto."

Page on Wills, 263, paragraph 293, says: "The assumption is made that the revocation clause of the codicil is inserted in order to permit of the dispositive provisions therein; and if the codicil is not so executed as to give effect to these provisions, it is treated as entirely void, including the clause of revocation."

Counsel asks the court to observe that Underhill refers to instances where there is a clause "expressly revoking"; but it would appear that here there is an express revocation, and the law has been laid down that in such case "an express revocatory clause will operate as such notwithstanding certain devises or legacies in the subsequent will failed to take effect on account of the incapacity of the devisee or legatee to take or on account of the illegality of the bequest, or on account of indefiniteness."

It is contended that the intention of the testatrix was not to absolutely revoke the testamentary bequest, but simply to modify or reduce the amount; but while it may be true that she intended to reduce the original amount, yet she expressly

canceled and revoked the prior disposition, and in place and stead thereof gave a less sum.

This was, in effect, a new legacy, and as the legatee can claim only by virtue of the codicil executed within the statutory period before the death of the testatrix, the intention of the testatrix must succumb to the emphatic declarations of the statute, which positively declares such a bequest void.

The codicil, therefore, can have no other effect than to revoke the prior legacy and cause the substituted bequest to fall into the residuary estate.

It follows that the petition should be and it is denied.